Welcome to day two of the in-bank court panel. I'm honored to be sitting this week with Judge Clement and Judge Holt. I mentioned yesterday Judge Holt is participating fully in our panel. He and his family regrettably were, suffered the regrouping from that, but he is engaged with the cases and will be listening to the oral arguments and otherwise confirm with him. So whatever we decide will be decided by three judges. So that piece of information just emphasizes to stay in the microphone and speak loudly and do it so that he gets the benefit of your argument as well as picks up the questions that are asked. Having said that, we'll call the first case, United States v. Johnny Smith. Mr. Frazier, you're up, sir. Good morning, Judge Stewart, Judge Clement. May it please the Court, my name is George Frazier and I represent Johnny Smith, defendant below and appellant here. I think this case is best addressed in four parts. The first part, the certificate of appeal properly issued. Second, this case is not covered by Cotton, Cothran and Dauphinville, if that's how it's pronounced. Third, counsel's behavior constitutes ineffective assistance of counsel. And fourth, the warrantless search of the contents of Mr. Smith's computer was unconstitutional as a result of which anything uncovered by the warrantless search and the search incident to the warrantless search ought to be suppressed. Do you wish me to address anything first? Oh, you're on your end. Okay. The logical starting place is that the certificate of appealability is properly granted. The section 2255 motion was drafted pro se in the usual rule of leniency applies. Here, the district court completely missed the points raised by this panel opinion and I think it would be unfair to hold Mr. Smith to a standard that Judge Vance failed to meet. Indeed, the government was unaware that it had to urge waiver and its papers in the district court make it clear that waiver did not cover collateral contest of conviction. The government's insistence that Mr. Smith never raised any of the points made by the court in its certificate of appealability is disingenuous and extreme. Mr. Smith did not phrase or parse his document or documents as the proverbial Philadelphia lawyer would. But there really can be no question that he is definitely charging it was error for no one to inform him what any waivers or pleas meant. He's definitely contesting his conviction, as the court of appeal pointed out was permitted. He is clearly continuing as if the appeal waiver had never been raised and he was quite evidently claiming violations of his Fourth, Fifth and Sixth Amendment rights. Second, the main reason relief is appropriate arises from the government's insistence that it is entitled to obtain waivers of constitutional rights to Mr. Smith at the same time it is moving to have him examined because it has reason to fear that he may not be competent to stand trial. The essential argument is poorly addressed and brief, but it should perhaps run something like this. The Fifth and Second Circuit cases I cited in brief stand for the proposition that failure to secure a valid and proper waiver of indictment by grand jury deprives the court of jurisdiction and ought to be raised by a defendant at any time. However, the Supreme Court ruled in Cotton that because a waiver of grand jury can be accomplished under Rule 7b, but subject matter jurisdiction can never be waived, it followed that a voluntary and knowing guilty plea subsumed or may disappear, if you will, the failure to secure indictment. This Court applied the rule in Dauphinbaugh, again I don't know if that's correct, and Cothran. What I tried to write in brief is that this case is different from Cotton, Cothran and Dauphinbaugh, and the argument runs something like this. It's basically a chronology. The waiver of indictment by grand jury was obtained on September 25th, 2013. The guilty, excuse me? That was in open court. No, the magistrate was merely handed a copy of what was said to be a waiver of grand jury. There's no questioning. Mr. Smith was never informed what rights he was giving up. Wasn't it discussed at the re-arrangement before the judge? At the re-arrangement, it was not. Judge Vance said, I see you've waived your indictment by grand jury. There was no discussion of it. I'm not complaining about what happened at the ---- He didn't deny that. I can't hear you. He didn't deny that when she said, I see you've waived grand jury. He didn't deny it, but he had no idea what he'd waived. And in addition, if you see, the waiver of grand jury and the guilty plea were agreed to on the same date. It wasn't until five months later that that plea was entered. In the interim, Mr. Smith had been committed to, I believe, Beaumont Low for a mental examination to see if he was competent to stand trial. At his first opportunity, Mr. Smith called his appointed lawyer and said he wanted to go to trial. She said, no, you can't. You've already agreed to plead guilty, and if you don't plead guilty, your wife and mother-in-law will be investigated and probably charged. He Because the abuse took place in the house? What abuse? What abuse? The abuse of a three-year-old. Oh, that took place in a house. I believe it was the neighbor's house. Why threaten the mother-in-law? I have no idea, but that's what he was told. Do you suspect that's what it means? I don't think that the wife and mother-in-law, you know, were implicated in any way. It's never been suggested. How could she be charged? I'm just saying what Mr. Smith wrote, that he was It doesn't make much sense. Well, it makes sense if he was scared, but why would a lawyer tell him that he couldn't go to trial? No guilty plea had been entered. You know, it was, this is, again, ineffective assistance of counsel. But more important, at this point, the government was asking that he knowingly, involuntarily relinquish known rights. This is inconsistent. This case may be a one-off. It may be an unusual situation that is not repeated, maybe unique for all I know. But the fact of the matter is, the government really ought not to be allowed to inform a court that it has reason to believe a defendant is mentally unstable. At the same time, it is insisting it has the right to obtain intentional and voluntary relinquishments of known constitutional rights. This is a standard and has been ever since D. H. Obermeier was decided in the early 60s. Well, there's nothing in the recitations of Mr. Smith during the rearrangement that signifies that he wasn't competent or otherwise didn't understand what was going on? He had been convinced by his lawyer that he was not allowed to withdraw his guilty plea. It hadn't been entered. He didn't have to withdraw it, but he didn't know. Well, isn't the judge entitled to rely to a degree on the person standing there in front of him or her, and she asks the questions and the person gives the answers, which seem to be responsive to the questions and which don't otherwise indicate anything to the contrary? I mean, that's what happens with the Rule 11 and so forth. I mean, these are a lot of things raised, you know, well after and all that, but at any event, just looking at what he said, there's nothing in terms of the way he responded or anything else that would seem to give rise to some question about it. When Mr. Smith was sent to Oakdale, he met Mr. Duffenbaugh and discussed his case with him and realized that he had given up rights that he didn't even know existed. Well, let me ask you this. Let's cut to the chase. I mean, what's the relief you're seeking for him? Invalidate his guilty plea? Well, I'm seeking two sets of relief. The first, I'm sorry, you're wrong. No, I'm just saying let's go to the end line and say what relief are you asking? First thing I want is a return to the status quo before a grand jury was allegedly waived. I've told Mr. Smith that you may be in a worse place and he said he's agreed that this is what he wants. And the other thing is the random roving search of computers is unconstitutional  You want him to go back to, revoke the guilty plea and go all the way back to square one starting over. That's the upshot of what you're saying? Yes. Yes, Your Honor. Okay. Guilty plea and withdrawal of the waiver of indictment. I assume that Mr. Smith will want to be indicted by a grand jury as an initial proposition. Do you assume that or do you know that? This is kind of risky if you don't know that. Well, I know that. I mean, he's told me. He's told me. You just assumed it. Yes, I'm not assuming. I'm sorry. I misstated the proposition. I don't know whether this Court feels it is able to grant suppression, but it seems to me that what the government has done is conducted a search of the contents of Mr. Smith's computer to see if it has justification for a warrant for a search of that computer. This is circular reasoning. It certainly doesn't avoid the constitutional question. And I know that many things are possible under the Patriot Act, but we ought to expect more from our government than having our frivolous, mundane, or embarrassing emails and other contents of our electronic equipment read. As Justice Gorsuch pointed out, today we do almost everything by computer. And the third-party doctrine of Smith and Miller is on life support. The Supreme Court ruled in Carpenter that historical self-cite data showing when a specified person made a specified call on a specified phone could not be obtained without a warrant. That effectively overruled Judge Clem's decision in In Re Application for Historical Self-Cite Data. If you can't get that kind of thing without a warrant, how can you possibly go into someone's computer without a warrant, and then, based on that, get a warrant? Well, does the Court have any more questions? No. Well, then, I shall reserve the four minutes for rebuttal. All right. Thank you, sir. All right. Mr. Portman. I'm going to start with the computer. Sure. May it please the Court, Kevin Boydman and Ryan McLaren, Chief of the Government. Starting with the computer question that we just finished, first of all, I think the most obvious answer is, to the extent this Court can address this situation, because there's been no suppression motion, there's been no facts adduced at any point in the District Court on this issue, the matter is covered by your precedent in United States v. Wyss. This is a peer-to-peer network. It's not the Carpenter case. It's not historical self-cite data that can be used to get a whole bunch of data to track people and track location. This is something which is much different than that. It's a peer-to-peer network, as routinely, and that's all that happened here. Now, once the officers got that, to my understanding, they just didn't get an IP address and then go busting the door. They then went and got a search warrant and executed the search warrant. So to the extent the Court can address it, I don't think there's any basis for suppression here anyway. Staying on that and actually going a little working backwards here in the order that Mr. Frazier brought up of what Mr. Smith is saying, but I think it's important to remember there's been no facts established, no facts credited by the District Court here because it didn't have the hearing, or any hearing for that matter. The facts that Mr. Frazier's relying on are really allegations in the 2255 process. They are allegations only, and they're not here, and they're not here for several reasons, primarily because the District Court did deny it without the hearing, and we acknowledge that the District Court erred in invoking the waiver sua sponte, but I don't think that changes the allegations into any more facts here. Going to the waiver issue on the indictment, I think the Court in Dauenbau has said it that the use of a bill of information, even in the absence of a waiver indictment, is a non-jurisdictional defect which the defendant cannot raise, and the failure to actually secure such a waiver does not affect the District Court's power to hear the case. I think the superseding bill of information here certainly gave the Court jurisdiction. Judge Clement, you asked about whether it was in open court. The waiver form was signed in open court, and the waiver, the form itself is on page 76 of the record. It was minimal, we acknowledge that, that the Court did a minimal job, at least of expressing it at page 407 in the original arraignment. Counsel for Mr. Smith did indicate that they had gone over the waiver, they had executed it, and at the rearrangement, the District Court confirmed that he had indeed waived his rights to indictment. Mr. Smith did not object to that. He said he reviewed the plea agreement, that's at page 420 of the record, and the plea agreement is actually at page 435, and the paragraph on the first page of the plea agreement confirms that Mr. Smith was in fact waiving his right to indictment. But again, beyond all that, that is still a non-jurisdictional defect, which we believe is not proper for 2255, it's waived by the guilty plea, and also couldn't be brought up on 2255 for procedural default reasons as well, which we did argue in the Court below. Part of the COA granted raised the question of whether the government's answer, in effect, invoked the waiver, because in the government's response, in fact, comments about the waiver, so putting aside for the moment of the government's concession, quote-unquote, that the District Court aired by raising it, did your answer, not you personally, the government's answer invoke the waiver? We did not invoke the waiver, Your Honor, and so we readily acknowledge it was, in light of the case law, it is error for the District Court on its own to invoke a waiver that we did not invoke, and we, that was a deliberate choice not to invoke the waiver, so our answer did not raise it. We acknowledge that. So we do acknowledge that was a problem, but in getting to the grant of the COA issue, however, Your Honor, we still believe that the COA was issued in error here, and to accept the Court would like to hear that argument, we do believe the COA was issued in error, because the test is not simply whether there was error in the District Court. Error doesn't grant a COA. A substantial showing of the, a substantial showing that reasonable jurors could debate a constitutional claim, and also when a 2255 is denied on a procedural basis, that the applicant can make the substantial showing that the procedural error, reasonable jurors could debate the procedural error as well. That just wasn't done here. If you look at the motion for COA that was filed, Mr. Smith did not say the District Court erred in invoking the waiver. Mr. Frazier mentioned a lot of things, and we agree, and we've listed them on page 15 and 16 of our brief, every claim that Mr. Smith raised in his motion for COA. The closest he comes to really talking about waiver is talking about that the District Court didn't inform him what the waiver was, that his counsel misadvised him. At no time does he say the District Court should not have invoked the waiver. It almost, he almost assumes that the waiver was proper, and that wasn't here, and that was one of the reasons we bring it up in our brief, one of the reasons we sought for the motion to reconsider, because we could not reconcile the grain of COA with what Mr. I understand. So the government invoked the waiver intentionally because it viewed that the matters he was raising were not encompassed within the waiver? Is that? No, Your Honor, it actually comes to a policy decision that the Department of Justice made. It's in the Justice Manual after, and I want to phrase that, it was after this plea agreement was signed. At the time the plea agreement was signed, there's no policy issues with the waiver, but in light of Department policy, we chose not to enforce the waiver. Okay. And since then, our plea agreements out of our office are actually read a little different than it was. I was trying to be clear whether the intentional, intentionally not invoking the waiver was sort of implicitly noting that the claims that he was raising weren't covered by the waiver. No. You know, I mean, you've clarified for me that. And just to further clarify, our policy is that when a claim sounds in ineffective assistance of the district court, that's why we chose not to. We do think, however, that, you know, while 2253, C2 and 3 are not jurisdictional requirements, as the Supreme Court said and Gonzales, as this Court has said in black, they are still mandatory. And the mandatory thing is that the movement show, the movement must make the substantial showing. At the very least, we think that has to mean the movement at least has to raise the claim. Here, we don't see where Mr. Smith raised the claim that the district court erred by invoking the waiver. We've looked at it several ways. In giving the pro se litigant as much liberal construction as you could, we still couldn't find where he actually said the district court erred by raising it. And so that's one reason we think the COA was defective in that and should have not issued. We also think the second part of the COA was also defective because 2253, C3 requires the COA to state which specific issues the prisoner has made a substantial showing on. Well, the second part of the COA dealing with the constitutional claims never did that. In fact, the grant of COA never says that Mr. Smith made any substantial showing or even goes so far as to say reasonable jurists could debate any of the constitutional claims. The grant just directed the government to respond to all the constitutional claims mentioned in Mr. Smith's COA. When we saw there was such a broad standing grant of COA that we didn't think it was specific and still not really specific to saying which grounds if any reasonable jurists could debate. So we do think the COA was issued in error and we think it should be vacated. And I think there's policy reasons to do that, Your Honor. And first of all, that it would be consistent with the language of Slack, Miller-Ell, of Gonzales in his court statement, and Black of requiring the movement to actually at least raise the claim, at least say the district court erred by doing this. I'm not expecting them to do it in perfect lawyer language. But at least something that you can liberally construe to fairly say, yes, he raised that. The other thing it would do, it would encourage litigants to bring the error to the district court's attention. And it would encourage pro se people to do that as well. And that's something that gets lost. This is not mentioned in our brief, but I think it's important to point out. We believe Mr. Smith could have brought this attention to the — this error to the district court's attention in Rule 59 or probably more appropriate, a Rule 60B motion. Because — He denied the COA. I'm sorry? Judge Vance denied the COA. The COA was granted by a different panel of this court. Oh, absolutely. But — and Judge Vance denied the COA in the same order denying the 2255. So we have a judgment against the defendant. But I think at that time a pro se litigant, Mr. Smith or someone in Mr. Smith's stance, could file a Rule 60B motion to reopen the Not a successive 2255, not a disguised 2255 like I know the court has seen several of these, but to actually say there's a procedural defect in the ruling. Judge Vance, you invoked a provision of the waiver. By law you can't do that. That brings a procedural defect and attacks the integrity of the 2255 proceeding without relitigating the merits. So I think that Rule 60B is something that Johnny Smith and others in Mr. Smith's situation could do if a judge improperly denies a 2255 for an improper reason. So we can't evaluate the merits at this point? I'm sorry? This panel cannot evaluate the merits at this point? I — What if we wanted a rule on the merits? Sure. I think — I think this is where there's a mix of your precedent in Black v. Davis and coming into the holding of Gonzales v. Thaler. Black v. Davis revoked the COA by finding that the district — the circuit judge who granted the COA did not have jurisdiction to grant the COA. And the concurrence in that case mentions that Gonzales v. Thaler — we have to come to grapple with that because Gonzales v. Thaler, of course, says the COA is jurisdictional, the other part is not. It's processing or it's a mandatory rule. Whether — whether you find that under your precedent that the COA was granted without jurisdiction or you find that the COA should not have been granted, I think the result becomes the same is you vacate the COA and dismiss the appeal. That said, I think Gonzales v. Thaler gives you jurisdiction to address these claims. Because the COA is — the grant of COA is the jurisdictional hook. That COA has been granted. Defective or not, the COA has been granted, so you have jurisdiction to consider it. And so if you go that — I'm sorry. Okay. I also realize that's probably something that needs to be fleshed out in light of other — other cases and — Well, the thing is, is, you know, the way the case was presented to us, it really wasn't, I guess, sort of in the more esoteric arenas of the COA grant. You know, we've got a guilty plea. We have an ostensible waiver. We don't have the invocation of the waiver by the government for reasons given. We've got all kinds of evidentiary assertions. There was no hearing. Then we've got all these ineffective assistance claims that are there, and then you argue, well, we've got to get to the propriety or not of the grant of the COA, when underneath it all is a base level, you know, of claims, which are there. To wit, the question that Judge Clement put to it, you know, the case is neither framed nor briefed by either side for the panel to really write into infinity on COA grants, et cetera, et cetera. You follow what I'm saying? I mean, the case isn't even presented to us that way, in brief, by the pro se, by either side. So it's like coming out at the end of the tunnel, here's this opinion that goes all off into all of these areas, which were never briefed below, never really presented to us in brief here, and something about that picture just doesn't seem worthy of all that when counsel hadn't presented it. You follow what I'm saying? I'm following exactly what you're saying, Judge Stewart, and I actually want to bring up on that. Especially as it comes to the COA grant, you're absolutely right, and I will be the first one to tell you I don't think we gave you a product of clarity on that issue, and I'll be the first one to apologize for that as Chief of Appeals. Say it again for the record. Sure. I will apologize as Chief of Appeals. We did not give you a brief that I really think was helpful on this issue, and if the Court wants, I certainly would write more on this issue if the Court wants. I realize the importance of the issue, especially in light of the concurrence of Black v. Davis and where Gonzalez v. Thaler is out, and this obviously, as the Court is very well aware, is an intricate part of the law. That's not an excuse. I wish we would have done something better and clearer for you. My comments weren't meant to be . . . No, I understand. . . . critical in the sense is that, one, it's the reason why we granted oral argument as opposed to straight off. It's because as we viewed the case and considered whether to have argument in it was just because of all this overlay of things, and we needed clarity from you and from Mr. Fraser just on the posture of the case. As you know, I think it's important for us to deal with the case as presented to us and not write on unintended consequences that were never raised and so forth. That's why I asked, and I'm sure it's the heart of Judge Clement's question, about, okay, can we get to the merits or not? I get your point on the COA. I think under Gonzalez-Thaler, you can get to the merits because the COA gave you jurisdiction to hear the case. What I don't think you can really do on the merits is give Mr. Smith the relief they're requesting, because I don't think the record is for that. I think if you find that the COA was properly issued and should not be vacated and you're going to address the merits, I really think the best practice . . . . . . is to vacate it then? Yes, vacate the 2255 judgment for the error that occurred and let the district court look at this in the first light. That's the usual course. This court is not, of course, a court of first view. If you wanted to go through and actually address more of them, as we've stated, and as we've stated below, several of these claims we do not think are recognizable for 2255 review. We think they are procedurally defaulted. We raised that in the district court below, recognizing, of course, that even under procedural default, Mr. Smith would have the opportunity to show cause, prejudice, or actual innocence. In light of the record, though, that's here, the factual basis, the PSR, the evidence of child pornography that's documented, I don't think he's going to be able to make a showing of actual innocence. But that's probably the best course to remand if you do that. To the extent, though, that you find even the COA problematic for not specifying the claim, which we think it does, I apologize for this. I am going outside our brief. I would just say perhaps the court might be informed by an 11th Circuit case of Spencer v. United States, 773 F. 3rd, 1132. Basically, a COA was granted on a procedural defect without, I believe, really specifying what constitutional claim could be debatable. The parties, nonetheless, briefed the constitutional claim for the court and the 11th Circuit, to my understanding, while saying it wouldn't be so lenient in the future for a defective COA, because everybody had briefed the matter, they supplemented the COA with a constitutional claim. So that's one avenue for you. I still think the better avenue would be to remand and send it back if you find the COA should not be vacated. If you do find the COA was defective and should not be issued, I think the answer is to vacate the COA and dismiss the appeal without prejudice and then Mr. Smith, if there's any other relief he wants to file, possibly a Rule 60B motion in the district court, that could be played at that point. But I think that's the options the court has. In any case, we don't believe there's enough in the record here to vacate the conviction, vacate the sentence, or suppress evidence. It's just not there. At the most, we think the court could do is vacate the 2255 and remand to the district court. Again, if the court wishes any supplemental briefing, more than happy to do that. Other than that, are there any other questions? And with that, we'll sit down. Thank you very much, Jim. Thank you, Mr. Boitman. Mr. Boitman said that no facts are established and I'm really relying on allegations. It is true, as the government has conceded, that a hearing on the ineffective assistance of counsel will be necessary to develop it. I'm not contesting jurisdiction. In fact, the Certificate of Appealability grants this court jurisdiction to consider these issues. I also believe this is an excellent opportunity for the court to exercise a supervisory jurisdiction to see that courts within this circuit follow the rules laid down by this court. And I should note that the Certificate of Appealability was granted by a single judge, but was affirmed by a panel. So it's not simply a single judge at issue. Other than that, this is a procedural morass and I leave you to it. Thank you, Your Honor. Well, no truer statement could be made. All right, but as I said, thank you, Mr. Fraser, you're a CJA panel and appointed and we appreciate your fine work in this case briefing and coming oral argument as we do all of our CJA panel attorneys who do us well to help us get around the case. Thank you, Mr. Boitman, for the clarity. We'll dig into it and if we need some more help, we'll let you know in short order. Thank you. All right. Appreciate it.